UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CONSERVATIVE PARTY, by MIKE LONG,      :
its Chairman, and PAUL ATANASIO,       :
its Treasurer; WORKING FAMILIES        :
PARTY, by ROBERT P. MASTER, its        :
Chairperson, DANIEL CANTOR, its        :
Executive Director, and DOROTHY        :
SIEGEL, its Treasurer; and             :
TAXPAYERS PARTY, by DAVID NEZELEK      :
and RUS THOMPSON,                      :
                                       :
            Plaintiffs,                :       10 Civ. 6923 (JSR)
                                       :
      v.                               :       OPINION
                                       :
JAMES A. WALSH, DOUGLAS A. KELLNER,    :
EVELYN J. AQUILA, and GREGORY P.       :
PETERSON, in their official            :
capacities as Commissioners of the     :
New York State Board of Elections;     :
TODD D. VALENTINE and ROBERT A.        :
BREHM, in their official               :
capacities as Co-Executive             :
Directors of the New York State        :
Board of Elections,                    :
                                       :
            Defendants.                :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

On February 3, 2011, plaintiffs the Conservative Party, the Working Families Party, and the Taxpayers Party filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983 challenging the constitutionality of New York Election Law § 9-112(4)[1] (the

---

[1] See N.Y. Elec. Law § 9-112(4) ("If, in the case of a candidate whose name appears on the ballot more than once for the same office, the voter shall make a cross X mark or a check V mark in each of two or more voting squares before the candidate's name, or fill in such voting squares or punch out the hole in two or more voting squares of a ballot intended to be counted by machine, only the first vote

"Statute") and its corresponding regulation, 9 N.Y.C.R.R. § 6210.13(A)(7)[2] (the "Regulation"). The Statute and Regulation together codify the State's policy and practice with respect to so-called "double-voting," a problem that arises when a candidate accepts the nomination of multiple political parties and the voter improperly votes for that candidate on more than one party line. While it is clear in such a situation which candidate the voter intended to support, it is not clear which party should be credited with the vote. As detailed in the Statute and Regulation, the State of New York has chosen to resolve this ambiguity by counting the vote towards the "first" party on the ballot -- almost invariably one of major political parties. Plaintiffs, two minor political parties and one "independent body," allege that this policy and practice as embodied in the Statute and Regulation violates the First and Fourteenth Amendments of the United States Constitution.

On January 10, 2011, defendants, who are Commissioners and Co-Executive Directors of the New York State Board of Elections sued

---

shall be counted for such candidate. If such vote was cast for the office of governor, such vote shall not be recorded in the tally sheet or returns in a separate place on the tally sheet as a vote not for any particular party or independent body.").

[2] See 9 N.Y.C.R.R. § 6210.13(A)(7) ("If a ballot is marked in each of two or more target areas or sensitive areas for a candidate whose name appears on the ballot more than once for the same office . . . , only the first vote for such candidate with multiple markings shall be counted for such candidate.").

2

in their official capacities, moved to dismiss the complaint on various grounds, including, inter alia, that plaintiffs failed to state a claim upon which relief can be granted and failed to allege a violation of plaintiffs' constitutional rights. See Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint Pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and (6) ("Defs.' Mem.") at 8-19. On February 9, 2011 the Court issued a "bottom-line" Order denying the motion. This Opinion sets forth the reasons for that decision.

By way of background, two of the plaintiffs, the Conservative Party of New York State and the Working Families Party, filed the initial complaint in this action on September 14, 2010, seeking both preliminary and permanent injunctive relief. On October 15, 2010, after careful consideration of the briefing submitted by both sides, the Court denied the application for a preliminary injunction affecting the November 2010 election. Among other things, the Court found that plaintiffs had slept on their rights by waiting until a mere six weeks before the November 2010 election to file their Complaint, and that it would be inequitable for the Court to grant the extraordinary relief sought on such short notice. See 10/15/10 Memorandum Order. The Court therefore denied the motion for a

3

preliminary injunction so far as the November 2010 election was concerned.

Defendants then moved to dismiss the Complaint on November 9, 2010. Following full briefing and oral argument, the Court found that the Complaint lacked sufficient precision and granted plaintiffs leave to replead. See 12/06/10 transcript. On December 20, 2010, plaintiffs filed a First Amended Complaint that clarified plaintiffs' claims and added the "New York Taxpayers Party" as an additional plaintiff. Defendants then filed a new motion to dismiss on January 10, 2011. After another full round of briefing and oral argument on January 31, 2011, the Court, as noted, denied the motion by "bottom-line" Order on February 9, 2011, thereby allowing discovery to proceed.

Defendants' renewed motion to dismiss, in addition to attacking the legal merits of the plaintiffs' claims, raised two threshold issues that the Court dealt with at oral argument on January 31, 2011. First, defendants argued that plaintiffs lacked capacity to bring the action. Although the First Amended Complaint described the Conservative Party and the Working Families Party as "domestic not-for-profit corporations," defendants asked the Court to take notice of the public records showing that the entities bearing those names that filed rules with the State Board of Elections and nominated

candidates in the 2010 election were unincorporated associations, see Defs.' Mem. at 3-4. The Taxpayers Party, if it exists at all, is also an unincorporated association. See Second Am. Compl. ¶¶ 18-23. Section 12 of the New York General Association Law confers the capacity to sue on behalf of an unincorporated association on its president or treasurer. Defendants argued, therefore, that only a president, treasurer, or an elected or de facto officer performing equivalent functions could bring suit on behalf of each of the plaintiffs here. See Locke Assocs., Inc. v. Fdn. for Support of United Nations, 661 N.Y.S.2d 691, 693 (Sup. Ct. N.Y. Co. 1997). Finding this to be a hyper-technical flaw, the Court allowed plaintiffs to file a Second Amended Complaint that modified the First Amended Complaint in this limited respect only, while otherwise proceeding with the motion to dismiss. Plaintiffs filed a Second Amended Complaint in accordance with the Court's instructions on February 3, 2011.[3]

---

[3] The Second Amended Complaint now names the following parties as plaintiffs: (1) the Conservative Party, by Mike Long, its Chairman, and Paul Atanasio, its Treasurer; (2) the Working Families Party, by Robert P. Master, its Chairperson, Daniel Cantor, its Executive Director, and Dorothy Siegel, its Treasurer; and (3) the Taxpayers Party, by David Nezelek and Rus Thompson. The Second Amended Complaint is otherwise identical to the First, and the remainder of the parties' arguments concerning the merits of the First Amended Complaint apply equally to the now operative Second Amended Complaint.

Defendants' second threshold issue was that, even if plaintiffs had the capacity to sue, they lacked standing to do so. The Court dismissed this argument from the bench for the reasons explained during oral argument. See 01/31/11 transcript at 10-16. Briefly stated, although defendants maintained that plaintiffs had failed to allege any actual injury to themselves (as opposed to other minor parties) resulting from the alleged infirmities of the Statute and Regulation, the case law makes clear that the "injury in fact" in an equal protection case is the denial of equal treatment resulting from the imposition of a barrier, not the ultimate ability to obtain benefits if that barrier is eliminated. Rockefeller v. Powers, 74 F.3d 1367, 1375-76 (2d Cir. 1995) ("[Plaintiffs] need not establish that, absent the current rule, they necessarily would see more candidates on their ballot. Their claim that the rule decreases the likelihood that they will have choices among delegates amounts to a sufficient pleading of 'injury in fact' and a 'causal connection.'") (emphasis removed).

With these threshold issues resolved, the Court turned to defendants' substantive attacks. In their Second Amended Complaint, as to which the defendants' renewed motion to dismiss ultimately applied, plaintiffs allege that under New York Election Law § 9-112(4) and 9 N.Y.C.R.R. § 6210.13(A)(7), double-votes are

automatically counted towards the "first" party on the ballot. Second Am. Compl. ¶ 3. Pursuant to N.Y. Election Law § 7-116, however, the "first" party on the ballot will be the party that received the greatest number of votes in the prior gubernatorial election. The combination of these laws thus ensures that double-votes -- technically although improperly cast for multiple parties -- will almost always be counted as a vote for one of the major parties, rather than for a minor party.[4] Plaintiffs allege that this violates their "core constitutional right to have all votes cast in their favor counted and reported fairly and accurately." Second Am. Compl. ¶ 4.

The practical consequences of this constitutional violation are, plaintiffs allege, substantial and deleterious. This, plaintiffs allege, is because it is "critical for political parties to be able to measure the support that they receive at the ballot box in order to attract new candidates and members, to raise money effectively, to facilitate their ability to strategize for future

---

[4] Plaintiffs note that the State's treatment of double-votes stands in stark contrast to its treatment of so-called "over-votes": votes for more than one candidate for a given office. Second Am. Compl. ¶ 9. The ballot instructions specifically warn voters against over-voting, see N.Y. Election Law § 7-106(5)(6), and when an optical scanner machine detects an over-vote it provides the voter with a warning and an opportunity to correct the ballot, see New York Election Law § 7-202(1)(d). No such warnings are given to voters who double-vote. Second Am. Compl. ¶¶ 58-64.

7

elections, and to advance the issues they care about. It is equally critical for voters to be able to count on the fact that their expressed support of minor political parties will be credited." Id. Moreover, accurately counting votes in the New York gubernatorial election is particularly important because those tallies are used to determine ballot access and order for the next four years. Id. ¶ 5; N.Y. Election Law § 7-116. Parties that do not reach the 50,000 vote threshold in the most recent gubernatorial race are considered only "independent bodies," see N.Y. Election Law § 1-104, and are required to submit nominating petitions to place candidates on the ballot. Id. ¶ 42; N.Y. Election Law § 6-138. Thus, plaintiffs allege, the Statute and Regulation, by causing double-votes to be assigned only to the major party and not to the minor party, discriminate against minor parties and "impose[] a variety of burdens that, both independently and collectively, severely restrict the ability of minor parties to compete with major parties in the political marketplace." Second Am. Compl. ¶ 35.

Plaintiffs further allege that, although the State's policy of crediting all double-votes to the first party on the ballot has been in place for many years, the issue has gained newfound significance because of the federally-mandated transition from lever to optical scanner voting machines. Id. ¶ 6. The old voting machines did not

8

physically allow a voter to pull two levers for any office, and it was therefore impossible for a voter to double-vote for a single candidate on more than one party line. Id. Thus, only voters who voted on a paper ballot could double-vote, and, according to plaintiffs, paper ballot voting "comprised a tiny percentage of the 4.7 million votes that were case in the 2006 gubernatorial election." Id. ¶ 7. However, as required by the Help America Vote Act of 2002, 42 U.S.C. § 15301 et seq. ("HAVA"), New York enacted the Election Reform and Modernization Act of 2005, which introduced new optical scanning voting machines for the first time in 2010. These machines do not prevent double-votes, but simply count them for the first-named party. Id. at ¶¶ 1-9; 33-34. As a result, according to plaintiffs, "available data indicates [sic] that there were likely tens of thousands of double-votes in the 2010 general election in New York." Id. ¶ 47 (emphasis removed). Such data suggest that "[t]he number of double-votes in the 2010 election was material to Plaintiff Taxpayers Party's ability to reach the 50,000 vote threshold for political party status, and in future elections will likely be material to and affect all Plaintiffs' ability to reach the 50,000 vote threshold for political party status and Plaintiffs' ballot placement in New York." Id. ¶ 54.

In their motion to dismiss, defendants, in a variation of their "no injury in fact" threshold argument, see supra, emphasize the Supreme Court's recent iteration of the requirement that "[f]actual allegations be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007), and contend that the complaint must be dismissed as too speculative. This argument is without merit. Plaintiffs allege that the Statute and Regulation, when applied in conjunction with N.Y. Election Law § 7-116, codify a discriminatory counting rule that places unequal burdens on both the right to vote and the right to associate. In an equal protection case, and right of association case, no more is required to satisfy the federal pleading standard. Although it is true that the exact rate of double voting in the 2010 New York State General election is not yet known, the palpable difference between the old voting machines that prevented such double-votes and the new machines that allow double-votes render the allegations of injury entirely plausible. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

A more colorable issue is whether the alleged burden on plaintiffs' First and Fourteenth Amendment rights that the Statute and Regulation impose can be overcome, as a matter of law, by the State's justification for the Statute and Regulation -- and,

10

correlatively, what standard should be used to assess this issue. In cases involving alleged discrimination against minor parties, "[t]he Supreme Court has said that if state law grants 'established parties a decided advantage over any new parties struggling for existence and thus place[s] substantially unequal burdens on both the right to vote and the right to associate' the Constitution has been violated, absent a showing of a compelling state interest." Green Party of New York v. New York State Board of Elections, 389 F.3d 411, 419-20 (2d Cir. 2004) (quoting Williams v. Rhodes, 393 U.S. 23, 31 (1968)).[5] Moreover, "even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty," but must rather adopt the "least restrictive means" available to achieve its ends. Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 183 (1979).

In this case, plaintiffs allege that the Statute and Regulation place discriminatory burdens on minor political parties, and the

---

[5] See also Anderson v. Celebrezze, 460 U.S. 780, 793-94 (1983) ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and -- of particular importance -- against those voters whose political preferences lie outside the existing political parties. . . . By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas.").

11

alleged unequal burdens are those that affect plaintiffs' ability to exercise their First Amendment rights. Accordingly, as in Green Party, the Court is "faced with a situation where the plaintiffs' First Amendment claims substantially overlap with their equal protection claims." Green Party, 389 F.3d 411 at 420. The Court will therefore adopt the Second Circuit's analysis in that case as the appropriate legal standard:

> With respect to both claims, we must first determine the character and severity of the alleged burdens. If we conclude that the burdens on plaintiffs' associational rights are severe, we must next analyze the state's purported interests to determine whether those interests are compelling and, if so, whether the alleged burdens are necessary for the state to achieve its compelling interests. If we determine . . . that the state's interests are not sufficient to justify such burdens, we must rule that the plaintiffs have a substantial likelihood of success on the merits of their claims.

Id.

In this case, as noted, plaintiffs argue that the Statute and Regulation impose a number of burdens on minor political parties and independent bodies. First, they contend that "a fair and accurate count of the number of votes cast for each party in each election is critical to the ability of minor parties to secure a place on the ballot." Second Am. Compl. ¶ 42. Under New York Election Law §§ 1-104(b) and 6-138, only political organizations that poll at least 50,000 votes for their gubernatorial candidates achieve full-fledged "party" status, and only political parties are guaranteed placement

on the ballot. Id. By contrast, "independent bodies" must go through the "labor- and cost-intensive process of submitting nominating petitions to place their candidates on the ballot." Id. (citing N.Y. Elec. Law § 6-138). The Court agrees that the distinction between a minor political party on the one hand and an independent body on the other is important in terms of ballot access, and that the State's double-vote counting rule burdens minor parties and independent bodies by making it more difficult for them to cross the crucial threshold. See generally Anderson v. Celebrezze, 460 U.S. 780 (1983).

Second, plaintiffs contend that the Statute and Regulation burden their ability to achieve a favorable ballot placement. Defendants are surely correct that plaintiffs have no constitutional right to appear first on the ballot. As stated in New Alliance Party v. N.Y. Bd. of Elections, 861 F. Supp. 282 (S.D.N.Y. 1994), "access to a preferred position on the ballot so that one has an equal chance of attracting the windfall vote is not a constitutional concern. . . . The Constitution does not protect a plaintiff from the inadequacies or the irrationality of the voting public; it only affords protection from state deprivation of a constitutional right." Id. at 295. The Court agrees with plaintiffs, however, that New Alliance Party is inapposite to the issues here. Plaintiffs

13

do not assert a freestanding right to receive any particular placement on the ballot; rather, they "assert the right to be free from unabashed discrimination in the process of determining ballot order." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pls.' Mem.") at 16. They argue that, having chosen to determine ballot order based on the number of votes cast for a particular party in the prior gubernatorial election, the "State cannot then stack the deck in favor of the major political parties, to the disadvantage of the minor political parties, by assigning votes to the major parties that they did not actually receive." Id. Unlike the minor party in New Alliance Party, which asserted the right to be listed first among the non-full-fledged parties in order to capture "windfall" votes, plaintiffs in this case seek to prevent the major political parties from receiving all the credit for votes that may have been intended to support the minor parties. Id.

Third, plaintiffs argue that the Statute and Regulation burden the ability of minor parties and independent bodies to fundraise, to influence elected officials on matters of public policy, and to recruit candidates and members.[6] Second Am. Compl. ¶¶ 36-41.

---

[6] Although defendants cite Timmons v. Twin Cities Area New Party, 520 U.S. 351, 362-63 (1997), for the proposition that political parties do not have a right to use the ballot itself "to send a particularized

14

Plaintiffs have alleged that there is a strong correlation between the number of votes a minor party/independent body receives and its ability to accomplish these aims, an allegation that comports with common sense. Id. Accordingly, the Court finds that the Statute and Regulation impose another cognizable burden in this respect.

Finally, plaintiffs argue that the State's policy burdens the voters themselves, "who have the fundamental right to have their intended votes counted and reported fairly and accurately." Id. ¶ 44. According to plaintiffs, their "members are harmed when they signal their intent to support a minor party but the State credits their vote as if it had been cast exclusively for a major party." Id. The State might have sought to prevent this problem by not counting double-votes at all. But having chosen instead to count them, the State cannot distort how the voters actually voted. This then, is a fourth impermissible burden imposed by the Statute and Regulation.

The Second Amended Complaint thus adequately alleges severe burdens that the Statute and Regulation impose on minor parties,

---

message, to its candidate and to the voters, about the nature of its support for the candidate," this case is distinguishable. While it is true that political parties have no right to use the ballot to itself send convey messages to voters and/or candidates, that does not mean that political parties have no right to use <u>accurate election results</u> to convey their strength to candidates, voters, and potential donors.

independent bodies, and voters themselves.[7] The Court must now consider whether the State's policies embodied in the Statute and Regulation further a compelling interest and whether it has chosen the least restrictive means of achieving that interest.

Defendants articulate the State's interest as follows:

> The State has a compelling interest in ensuring that candidates with the most support win the election and that elections run smoothly and efficiently. Those goals are achieved by the manner in which the legislature determined double votes should be counted. The statute not only provides an administratively efficient and swift way to credit a vote for the candidate who is the clear choice of the voter, it also makes certain that the vote is counted only *once* despite the fact that the voter voted for the same candidate multiple times. Election Law §9-112(4) is, therefore, a remedial statute intended to ensure that the votes for candidates are fairly counted and that the candidates with the most support are actually elected.

Defs.' Mem. at 21. Defendants further argue that the State's chosen policy is the least restrictive means of achieving these goals because it is the only option that simultaneously (1) assures that the voter's choice of candidate is captured and recorded; (2) assures that only one vote for a candidate is counted; (3) treats all minor parties the same; (4) counts the vote for a party whose ballot position is already secure; (5) operates so that the vote is typically

---

[7] Of course, for purposes of the instant motions, the Court takes all allegations of the Second Amended Complaint, and all reasonable inferences therefrom, most favorably to plaintiffs. Discovery may well show that the burdens are more ephemeral, or the State's justifications more weighty.

16

credited to the candidate's own party; and (6) is nondiscriminatory because it is neutral on its face. Id. at 23-24.

It is well-established that "[s]tates certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 364 (1997). However, while discovery may yet reveal that the State's chosen method of resolving the double-vote issue serves substantial interests, the Court is not persuaded at this stage that the State has chosen the least restrictive means available to achieve this end. Plaintiffs argue that there is no logical reason why the candidate could not receive credit for the vote, and then, with respect to the parties, either: (1) credit neither party, (2) split the vote among both parties, (3) credit only the minor party, or (4) credit both parties. Pls.' Mem. at 23. None of these alternatives -- and others that one might readily infer -- would have the same discriminatory impact on minor parties as does the existing rule.

In short, as of the time of the instant motion, plaintiffs had adequately alleged that the Statute and Regulation severely burdened their First and Fourteenth Amendment rights and the State had not yet established, at a minimum, that the State had chosen the least restrictive alternative to achieve its purported justification for

17

the Statute and Regulation.  Accordingly, the Court, for the foregoing reasons, denied defendants' renewed motion to dismiss.

                                                          _____
                                                          JED S. RAKOFF, U.S.D.J.

Dated:     New York, New York
           May 9, 2011